NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*

*v.*

CESAR CHRISPIN DELACUEVA, *Appellant*

No. 1 CA-CR 25-0140
No. 1 CA-CR 25-0091
(Consolidated)

FILED 01-14-2026

Appeal from the Superior Court in Maricopa County
No. CR2024-006065-001
The Honorable Mark H. Brain, Judge

**REVERSED AND REMANDED**

COUNSEL

Maricopa County Office of the Legal Advocate, Phoenix
By John D. Gattermeyer
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Joshua C. Smith
*Counsel for Appellee*

**MEMORANDUM DECISION**

Judge Andrew M. Jacobs delivered the decision of the Court, in which Presiding Judge D. Steven Williams and Judge Michael S. Catlett joined.

**J A C O B S,** Judge:

**¶1**         Cesar Chrispin Delacueva ("Delacueva") appeals his convictions and sentences for sexual assault and sexual abuse of the alleged victim ("J.M."), and the superior court's denials of his motion for new trial and motion to vacate judgment.  Delacueva argues the superior court erred by:  (1) failing to cure the prosecutor's comment on Delacueva exercising his Fifth Amendment right not to testify; (2) admitting objected-to, unnoticed Rule 404(b) evidence; and (3) denying Delacueva the right to cross-examine J.M. about her prior sexual history.  Because the court did not cure the Fifth Amendment violation from the State commenting directly on Delacueva's choice not to testify and erred in excluding evidence of J.M.'s prior inconsistent statements regarding her sexual history, we reverse and remand for a new trial.

## FACTS AND PROCEDURAL HISTORY

### A.         Delacueva and J.M. Talk on Snapchat and Then Meet Up.

**¶2**         In August 2022, Delacueva began to message J.M. on the Snapchat app after he put a heart emoji on one of her photos there.  They began to compliment each other – J.M. told Delacueva he "was handsome" and "was cute," and Delacueva told J.M. she "was pretty."  They continued to get to know each other via Snapchat, and J.M. told Delacueva she was 15.  Delacueva told her he was 17, even though he was 21.  Shortly thereafter, they agreed to meet up to go hiking.  Delacueva picked J.M. up from her home in Tempe.  After Delacueva picked her up, J.M. told him it was too late to go hiking, and they parked in a neighborhood a couple of blocks away, where they sat in Delacueva's car and talked.  Delacueva started making sexual passes at J.M., touching her legs and breasts.  J.M. testified the touching was not consensual.

**¶3**         Delacueva then asked J.M. to move from the passenger seat to the middle row of seats in his vehicle.  She did so, and he followed.  While seated in the middle row, J.M. testified she was "convinced" by Delacueva to give him oral sex.  She only participated for a couple of seconds.

Delacueva then moved all the way to the very back of the vehicle. J.M. eventually followed, testifying she "kn[e]w what he was trying to do."

¶4        While in the very back of the vehicle, Delacueva began taking J.M.'s clothes off and had vaginal intercourse with her. J.M. testified she was crying and asked him to stop. Delacueva stopped when another car drove past, after which he and J.M. moved back into the front seat and he drove her home.

### B.    J.M.'s Mother Takes Her to the Doctor, and the Doctor Alerts the Authorities.

¶5        The next day, J.M. told a friend what happened, and her friend told her she needed to get checked for sexually transmitted diseases. After J.M. told her mother what happened, her mother took her to the doctor. The doctor called police to report assault. Tempe police spoke to J.M. at the doctor's office before transporting her to another location to undergo a sexual assault nurse exam ("SANE"). J.M. gave the clothes she was wearing to the police, and they found sperm on her underwear which matched Delacueva's DNA profile. J.M. also picked Delacueva out of a photographic lineup.

### C.    The Authorities Investigate and Obtain Messages Between Delacueva and Other Individuals from Snapchat.

¶6        A detective obtained a warrant for Delacueva's Snapchat messages. Snapchat deletes unsaved messages 24 hours after they are sent and thus could only produce limited messages between Delacueva and J.M. Snapchat did provide some conversations between Delacueva and others, in which Delacueva misrepresented his age and set up dates to hike or eat.

### D.    The Court Denies Delacueva's Request to Introduce J.M.'s Inconsistent Statements About Being Sexually Active.

¶7        Throughout the investigation, J.M. told her mother, the SANE nurse, and a detective that she was not sexually active. She later told a DCS case manager that she had been sexually active with others despite her earlier statements to the contrary.

¶8        The defense sought to introduce evidence of J.M.'s inconsistent statements as suggesting a motive to lie under A.R.S. § 13-1421(A)(3). The superior court did not see how J.M.'s claim that she was not sexually active would be introduced, and did not "think the fact that [J.M.]'s simply denied having sex to others consensually on other occasions

3

establishe[d] the motive to lie." The defense urged that the rape shield exceptions do not depend on whether the State opens the door to that subject and are not solely limited to impeachment. The superior court ruled the defense could argue J.M.'s motive to lie without introducing evidence of her prior inconsistent statements, and that if testimony came in that suggested the evidence became pertinent, it would revisit the issue.

### E.   Trial

#### 1.   The Court Allowed the State to Introduce J.M.'s Forensic Interview Over Delacueva's Objections.

¶9           After the defense cross-examined J.M. about alleged inconsistencies in her testimony, the State sought to introduce J.M.'s full forensic interview while redacting the parts where she claimed she had not previously been sexually active. The defense objected that if the State was allowed to proceed with playing the redacted interview, it was let to "play the parts [in which] she's not lying." The superior court overruled the objection and let the State play the redacted forensic interview.

#### 2.   The Court Let the State Introduce Snapchat Messages Between Delacueva and Other Persons, Despite Problems With the State's Disclosures.

¶10          Over the defense's repeated objections, the court let one of the State's witnesses testify about the content of Delacueva's Snapchat messages with other, unidentified individuals. The court clarified that the State was allowed to examine a witness about these messages to demonstrate Delacueva's "modus operandi" under Arizona Rule of Evidence ("Rule") 404(b). Despite allowing this line of questioning, the court agreed with the defense that the State's disclosure did not comply with Rule 404(b). *See* Ariz. R. Evid. 404(b)(3)(B) (requiring the state to "articulate in the disclosure the permitted purpose for which the state intends to offer the evidence and the reasoning that supports that purpose").

¶11          As trial continued, the defense renewed its objection to the Rule 404(b) evidence, arguing "modus operandi is to prove identification" and "[t]his is not a case with contested identification," undermining the court's basis for letting the messages in. The court admitted it had "buyer's regret on that ruling," and limited the State thereafter to referencing one Snapchat message between J.M. and Delacueva.

### 3. The State Presents Testimony of a Victim Delacueva Previously Assaulted.

¶12 The State presented the testimony of Delacueva's ex-girlfriend, C.M., who he pled guilty to sexually assaulting in 2019. The State relied heavily on her testimony throughout its closing argument to suggest Delacueva "likes nonconsensual sex."

### 4. The State Emphasizes Delacueva's Silence in its Closing Arguments.

¶13 The State began its closing by arguing "this is not a he said, she said case," and claimed it was instead a "they said case," referring to the testimony of both J.M. and C.M.

¶14 In response, defense counsel asserted in closing that it was in fact a "he said, she said" case, reminding the jury no one else who testified knew what happened between Delacueva and J.M., and therefore the case was wholly dependent on whether the jury believed J.M.'s testimony.

¶15 In rebuttal closing, the State began with the following:

> Ladies and gentlemen, as I said at the beginning, this is not a he said, she said case. And let me be clear. The defendant does not have to testify at all. He doesn't have to provide any evidence. But the only evidence you heard in this case is what she said. You didn't hear anything about what he said because he didn't say anything at all.

¶16 The defense promptly objected, and in response the superior court instructed the jury to "rely solely on the evidence that was presented on the witness stand to the exclusion of all else."

¶17 After the State finished its rebuttal closing, defense counsel moved for a mistrial. The court noted that defense counsel referred in closing to what Delacueva may have thought or understood during the interaction with J.M. Based on that, the court ruled it was "appropriate" for the State to point out that these thoughts and understandings did not come from the witness stand and denied the request for a mistrial.

¶18 The jury returned a verdict of guilty on both counts. Delacueva timely appealed. We have jurisdiction. Ariz. Const. art. 6, § 9; A.R.S. §§ 12-2101(A)(1), 13-4031, -4033(A).

**DISCUSSION**

**¶19**        Because Delacueva timely objected at trial to each of the issues he raises, we apply harmless error review. *See State v. Henderson*, 210 Ariz. 561, 567 ¶ 18 (2005). When applying harmless error review, "the burden [is] on the state to prove beyond a reasonable doubt that the error did not contribute to or affect the verdict or sentence." *Id.*

**I.        The State Improperly Commented on Delacueva's Silence and Violated His Fifth Amendment Right Not to Testify, and the Court's Remedial Instruction Did Not Cure the Error.**

**¶20**        "In Arizona, a prosecutor is prohibited both by constitution and by statute from bringing to the jury's attention either directly or indirectly the fact that a defendant did not testify." *State v. Schrock*, 149 Ariz. 433, 438 (1986)*; see* U.S. Const. amend. V; Ariz. Const., art. 2, § 10; A.R.S. § 13-117(B). Longstanding and well-established precedent makes clear that "comment on the refusal to testify is a remnant of the inquisitorial system of criminal justice, which the Fifth Amendment outlaws." *Griffin v. California*, 380 U.S. 609, 614 (1965) (internal marks and citation omitted). We review constitutional claims *de novo*. *State v. Acuna Valenzuela*, 245 Ariz. 197, 211 ¶ 34 (2018).

**A.        The State's Comment Was Constitutionally Improper.**

**¶21**        We examine the State's comments and the superior court's instruction "in context to determine whether the jury would naturally and necessarily perceive them to be a comment on the failure of the defendant to testify." *Schrock*, 149 Ariz. at 438. "[T]o be constitutionally improper, the comment must (1) be adverse, in that it supports an unfavorable inference against the defendant, and (2) operate as a penalty for defendant's exercise of his constitutional right." *Id.* We also consider whether the State's comments were "calculated to direct the jurors' attention to the defendant's exercise of his fifth amendment privilege." *State v. McCutcheon*, 159 Ariz. 44, 45 (1988). Whether a prosecutor's comment on the defendant's choice not to testify "was intentional or accidental is of no moment." *State v. Rhodes*, 110 Ariz. 237, 238 (1973).

**¶22**        *First*, the State commented directly on Delacueva not testifying, so the jury would naturally and reasonably hear the comment as one on his failure to testify. *See Schrock*, 149 Ariz. at 438. The State opened its rebuttal closing by noting Delacueva did not have to testify, but then said "the only evidence you heard in this case is what [J.M.] said. You didn't hear anything about what [Delacueva] said *because he didn't say*

*anything at all."* (Emphasis added). Often a prosecutor's comment can reasonably be taken different ways. *Id.* at 439 (finding prosecutor's comment permissible because it only related to the fact the defendant did not support his alibi defense). This isn't one of those cases.

¶23 *Second*, the State's comment was adverse and supported an unfavorable inference against Delacueva. The State opened its rebuttal closing by highlighting Delacueva's silence – emphasizing its importance to the State's case. *See State v. Murray*, 250 Ariz. 543, 553 ¶ 37 (giving extra consideration where prosecutor's statements were "made in rebuttal argument when the words were most impactful"). The State's comment on Delacueva's silence suggested J.M. was more credible than Delacueva because J.M. testified and Delacueva did not.

¶24 *Third*, the State's comments operated as a penalty for Delacueva's exercise of his constitutional right not to testify. The State's comment on Delacueva's silence, alongside its argument that "the only evidence you heard in this case is what [J.M.] said," suggested the jury should hold Delacueva's silence against him. That violates protections enshrined in our nation's and state's founding documents. U.S. Const. amend. V ("No person . . . shall be compelled in any criminal case to be a witness against himself[.]"); Ariz. Const., art. 2, § 10 ("No person shall be compelled in any criminal case to give evidence against himself[.]"); *see also* A.R.S. § 13-117(B) ("The defendant's neglect or refusal to be a witness in his own behalf shall not in any manner prejudice him, or be used against him on the trial or proceedings.").

¶25 *Fourth*, the State's comments "direct[ed] the jurors' attention to the defendant's exercise of his fifth amendment privilege." *McCutcheon*, 159 Ariz. at 45. The State began its rebuttal closing by acknowledging Delacueva's right not to testify, but within the next two sentences explicitly connected his choice not to testify to the exercise of that right—i.e., "You didn't hear anything about what he said because he didn't say anything at all." This is impermissible. The State's comment here, if not proved to be harmless, is reversible error "because [it] called the jury's attention to the fact that the defendant had not personally presented his defense from the stand." *Id.*

### B. The Court's Intendedly Curative Comment Did Not Fix the Violation of Delacueva's Fifth Amendment Rights.

¶26 While sometimes "a proper limiting instruction may suffice to ensure the jury will not use the statement improperly[,]" that does not

mean "all such errors are harmless so long as the trial court provides an appropriate instruction." *State v. Carlson*, 237 Ariz. 381, 397 ¶ 61 (2015). The court instructed the jury before closing argument that Delacueva did not have to testify and that it was improper to draw an adverse inference from his silence: "The defendant is not required to testify. The decision on whether or not to testify is left to the defendant acting with the advice of an attorney. You must not let this choice affect your deliberations in any way. You must not conclude that the defendant is likely to be guilty because the defendant did not testify."

**¶27** But then, when the State made unfavorable reference to Delacueva's silence at the start of its rebuttal closing – the last thing the jury heard before it began deliberating – the court did not reaffirm the proper instruction it previously gave. Instead, it directed the jury to "rely solely on the evidence that was presented on the witness stand to the exclusion of all else." This instruction did not try to cure the State's reference to Delacueva's silence by confirming it was impermissible and could not give rise to an inference of guilt.

**¶28** Here, the court's curative instruction was not enough. *See Griffin*, 380 U.S. at 614 ("What the jury may infer, given no help from the court, is one thing. What it may infer when the court solemnizes the silence of the accused into evidence against him is quite another."). If anything, this instruction emphasized the significance of Delacueva's choice not to testify, and the contrasting reality that J.M. testified. *See Murray*, 250 Ariz. at 554 ¶ 39 (reversing because "the court's instruction . . . only reinforced the prosecutor's misstatement of the law").

### C. The State's Comment Was Outside the Scope of Proper Rebuttal.

**¶29** The State concedes the defense's closing "argument did not open the door for the State to discuss De La Cueva's silence," but nonetheless argues its comment was necessary to "right the scale[.]" *State v. Riley*, 248 Ariz. 154, 188 ¶ 129 (2020) (quoting *United States v. Young*, 470 U.S. 1, 12-13 (1985)). This argument is unpersuasive. Our supreme court's decision in *Riley* provides additional context, making clear that "[p]rosecutorial comments *which are a fair rebuttal to areas opened by the defense* are proper." *Id.* (quoting *State v. Alvarez*, 145 Ariz. 370, 373 (1985) (emphasis added)). The State's concession that the defense did not open the door for its comment on Delacueva's silence cannot be squared with its suggestion that the comment was necessary to "right the scale." Moreover, the State's "'wide latitude' in presenting closing argument to the jury" does

not allow it to violate Delacueva's constitutional rights. *Id.* (quoting *State v. Goudeau*, 239 Ariz. 421, 466 ¶ 196 (2016)); *State v. Smith*, 101 Ariz. 407, 409 (1966) ("The rule in *Griffin* is designed as protection for a constitutional privilege and, consequently, extreme caution must be exercised in permitting an evasion of these fundamental rights.").

### D.  The State's Comment Was Not Harmless Error and Delacueva Is Entitled to a New Trial.

**¶30**　　　The Arizona Supreme Court has made clear that violating a defendant's Fifth Amendment right not to testify by comment upon it creates fundamental, prejudicial error unless guilt is not meaningfully at issue in the trial.  Establishing the general parameters of the law in this area, our supreme court wrote in 1966 that the "constitutional guarantee against testimonial compulsion . . . has been considered to be of such importance and magnitude that where it has been breached no resulting prejudice need be shown in order to warrant a new trial."  *Smith*, 101 Ariz. at 409; *Rhodes*, 110 Ariz. at 238 ("In a case where the defendant's rights against self-incrimination are violated it is fundamental error.").  As we have noted, *Smith* seems to support the proposition that violating a defendant's Fifth Amendment right is "prejudicial per se."  *State v. Ramos*, 235 Ariz. 230, 236 ¶ 16 (App. 2014).

**¶31**　　　But as the law in this area has developed, our supreme court carved out a limited subrule cutting the other way:  where the defendant's guilt is not fairly disputable, commenting on the defendant's exercise of their Fifth Amendment right not to testify may be harmless error.  Thus, in *State v. Guerra*, our supreme court concluded that comments on a defendant's silence were harmless where the defendant also "testified at trial that he stabbed and killed [the victim]" and "the judge distracted the jury with his interruption to plan the lunch break."  161 Ariz. 289, 297 (1989).  Similarly, in *State v. Trostle*, our supreme court held that a prosecutor's statement was "an impermissible comment on defendant's failure to testify" but that it created only harmless error because it did not "contribute[] to the jury's verdict in view of the overwhelming evidence of guilt and the context within which it was made."  191 Ariz. 4, 16 (1997).  There, the defendant had led police to a remote desert area where the murder victim's body was found, leaving no meaningful alternative to guilt.  The question of harmlessness comes down to whether "a reasonable jury could have reached a different result."  *Ramos*, 235 Ariz. at 236 ¶ 18; *see also Rhodes*, 110 Ariz. at 238.

¶32 Given this law, the State has not met its burden of establishing beyond a reasonable doubt that its "error did not contribute to or affect the verdict or sentence." *Henderson*, 210 Ariz. at 567 ¶ 18. The comment was impermissible for the reasons previously discussed, and the State's suggestion that "[a]ny theoretical error was harmless" similarly fails.

¶33 Reinforcing our analysis, the State's comment on Delacueva's silence closely parallels comments our supreme court has previously held to be impermissible. *See State v. Decello*, 113 Ariz. 255, 258 (1976) ("The comment 'no one, no one, no one got up on this stand and testified to you contrary to what was testified to you by the witnesses' was certainly calculated to point out to the jury that the defendant had not taken the stand and testified and was, we believe, fundamental error."); *Rhodes*, 110 Ariz. at 238 (Prosecutor's comment that the defendant "'did not have to explain away, or that she did not explain away off of that witness stand' [certain evidence] . . . [wa]s a direct comment on the defendant's failure to take the witness stand" and accordingly "[t]he defense motion for a mistrial should not have been denied.").

¶34 The State's comment here created fundamental, prejudicial error. It was even more direct than similar comments in *Decello* and *Rhodes*. Additionally, the comment was not made alongside an admission of guilt, in conjunction with other overwhelming evidence, or in a context that reduced the import the jury would attach to the comment as in *Guerra* and *Trostle*. Where, as here, the only direct evidence of the crime alleged is the victim's testimony, and the State's comment bolstered that testimony while drawing attention to the defendant's silence, "the evidence hangs in [a] delicate balance with any prejudicial comment likely to tip the scales in favor of the State." *Rhodes*, 110 Ariz. at 238. Accordingly, "we cannot say that the comment is beyond a reasonable doubt harmless" and instead "must follow the constitutional and legislative mandate that a defendant's refusal to be a witness in his own behalf shall not in any manner prejudice him or be used against him." *Id.* (citation omitted).

¶35 The remedy for the prejudice resulting from the violation of Delacueva's constitutional rights is a new trial. *See Decello*, 113 Ariz. at 258 (reversing and remanding for a new trial after finding prosecutor's comment on defendant's silence was fundamental error); *Rhodes*, 110 Ariz. at 238 (same).

## II.   The Court Erred By Excluding J.M.'s Inconsistent Statements.

¶36        We review the court's decision to exclude J.M.'s prior inconsistent statements regarding her sexual history for an abuse of discretion. *State v. Herrera*, 232 Ariz. 536, 549 ¶ 38 (App. 2013). "The court abuses its discretion by committing an error of law while reaching a discretionary conclusion." *Douros v. Morse*, 258 Ariz. 546, 550 ¶ 13 (App. 2024).

¶37        Delacueva argues the court erred by applying A.R.S. § 13-1421 to bar evidence that J.M. lied to investigators about being sexually active, given that it showed a motive to lie. The State argues the court correctly excluded the evidence because it was not necessary to Delacueva establishing a motive to lie. We agree with Delacueva that the court abused its discretion when it excluded this evidence because it relied on an incorrect interpretation of A.R.S. § 13-1421(A)(3) to do so.

¶38        Our legislature enacted A.R.S. § 13-1421, the rape-shield law, to limit the defense's ability to introduce evidence regarding a victim's past sexual history in sexual assault trials. Our law is cautious in considering such evidence, which must clear several hurdles before it is admissible. It must first be "relevant and . . . material to a fact in issue in the case[,]" and second, "the inflammatory or prejudicial nature of the evidence [must] not outweigh the probative value of the evidence.'" *Herrera*, 232 Ariz. at 549 ¶ 38 (quoting A.R.S. § 13-1421(A)). Third, it must also fall within one of the statute's exceptions allowing admission, one of which is "support[ing] a claim that the victim has a motive in accusing the defendant of the crime." A.R.S. § 13-1421(A)(3). The "motive to lie" exception in this subsection of the rape-shield law, which allows defendants in certain circumstances to use evidence regarding sexual history to cross-examine a witness regarding their potential partiality, gives effect to a defendant's constitutional right to cross-examine. *See Davis v. Alaska*, 415 U.S. 308, 316-17 (1974) ("We have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination.").

¶39        The State is right that the "motive to lie" exception is no license to introduce sexual history evidence as a general matter. A defendant's right to present relevant testimony "is not limitless" and "may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process.'" *State v. Gilfillan*, 196 Ariz. 396, 402 ¶ 20 (App. 2000) (quoting *Chambers v. Mississippi*, 410 U.S. 284, 295 (1973)). But the court

erred in excluding it here, because it applied the wrong legal standard, which is clear in three ways.

**¶40**        *First*, the language of the statute calls for the court to ask whether this specific evidence suggested J.M. had a motive in accusing Delacueva of the crime. A.R.S. § 13-1421(A)(3). But the superior court asked itself a different question. It analyzed instead whether, without this evidence, the defense could argue J.M. had a motive to lie. This is incorrect because the statute doesn't ask whether *other evidence* suggests a motive to lie, thus allowing the court to exclude this evidence – it asks instead whether *this evidence* suggests a motive to lie. A.R.S. § 13-1421(A)(3). There is at least an argument that it does.

**¶41**        *Second*, perhaps given its framing of the issue, the court did not analyze whether the evidence fell within an enumerated exception or whether the prejudice from it outweighed its probative value, as A.R.S. § 13-1421 requires. On remand, the superior court should consider whether the evidence is relevant, and if so, whether its inflammatory or prejudicial nature outweighs its probative value. *Herrera*, 232 Ariz. at 549 ¶ 38 (quoting A.R.S. § 13-1421(A)).

**¶42**        *Third*, the court's references to whether the State would "open the door" to cross-examining J.M. about the evidence at issue underscore that it did not apply the correct standard. Such considerations can be relevant to determining the admissibility of evidence regarding a witness' character for truthfulness under Rule 608 or 613, but are not relevant to admitting evidence under one of the exceptions in A.R.S. § 13-1421(A). Moreover, if the court believed the defense had to wait for the State to "open the door" for the admission of evidence J.M. lied to investigators, the State did so by introducing her full forensic interview and only redacting her inconsistent statements about her sexual history.

**¶43**        The State has not met its burden of proving this error did not contribute to the verdict or sentence beyond a reasonable doubt. *Henderson*, 210 Ariz. at 567 ¶ 18. Any evidence bearing on J.M.'s credibility, which was directly at issue, could have tipped the scales in favor of acquittal.

## CONCLUSION

**¶44**        We reverse Delacueva's convictions and sentences and remand this matter for a new trial. Because we do, we do not reach Delacueva's assertion of error in regard to the Rule 404(b) evidence admitted over his objection at trial, particularly given that the superior

court, commendably rethinking its own ruling during the trial, concluded it should not have admitted that evidence.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**: JR